This is a government contract action in which the plaintiffs appear pro se on the parties’ cross-motions for summary judgment. Plaintiff contractors take the position that they were deprived of procedural due process when the Corps of Engineers Board of Contract Appeals (the Board) refused to grant an extension of their hearing date, and that this resulted in a failure to comply with the Wunder-lich Act, 41 U.S.C. §§ 321, 322. Defendant answers that the administrative decision is legally and factually correct, is supported by substantial evidence, and should be upheld by this court. For the reasons set forth below, we hold for defendant because we find, without need for oral argument, that there has been no violation of plaintiffs’ due process rights, and that the Board’s decision is in full compliance with Wunderlich Act standards.
Edmond Pfotzer and E. John Pfotzer are partners in a business which in 1949 was awarded a contract to construct some additional filters at the filtration plant of the Washington Aqueduct in and near the District of Columbia. After completion of the work, which was delayed past the *646 contract completion date, plaintiffs filed numerous claims with the Contract Appeals Board, relating inter alia to delays, liquidated damages and work quality. Some of these claims were the subject of the petition in the present case filed by plaintiffs in this court in 1972. As a result of discovery initiated by plaintiffs in the Court of Claims action, they were granted a stay of proceedings in this court, and thereupon petitioned the Board for a rehearing of its decisions based on alleged newly discovered evidence. This motion was granted by the Board, and plaintiffs filed twelve amended complaints with the Board by April 4, 1978. In response to several requests by plaintiffs that defendant file answers to the complaints, the Board informed the parties on June 22, 1978, that unless answers were received within 30 days, the Board would enter a general denial on the Government’s behalf, as provided for in Rule 6(b) of the Board’s Rules. By letter of July 14,1978 to the Board, the Government acquiesced in the issuance of a general denial, and so informed plaintiffs. In addition to this general denial, in October 1978, the defendant filed motions to dismiss the complaints, and by order of the Board on November 9,1978, the motions were considered as part of defendant’s answers. This order also required defendant to file more extensive answers within seven days of receipt of the order. These supplemental answers were filed on November 14, although plaintiffs allege that they did not receive them until November 27.
During August 1978, the rehearing, which had been originally scheduled at an earlier date and postponed severed times pursuant to requests of both parties, was finally set for December 5, 1978. Plaintiffs objected to this date as allowing them insufficient time to evaluate the Government’s motions and answers, and to prepare for the hearing, but they were unsuccessful in obtaining the three-month extension they sought. In addition to repeatedly denying plaintiffs’ extension request, the Board specifically informed plaintiffs on November 29,1978, that
[t]he unexcused absence of a party at the prehearing conference or at the hearing on 5 December 1978 will not be occasion for delay. In the event of such absence, the *647 hearing will proceed and the case will be regarded as submitted by the absent party as provided by Rule 11.
Notwithstanding this order, plaintiffs informed the Board that they would not appear at the December 5 hearing, that they did not waive a hearing, and that they urged the Board to reconsider its denial of an extension — a denial which plaintiffs contended was a deprivation of their procedural due process rights. Plaintiffs did not appear at the hearing, and on December 11, 1978, the Board wrote plaintiffs informing them that the hearing had been held, as scheduled, that their absence had been ruled to be unexcused, and that the case had been treated as being submitted for decision on the record, without an oral hearing for plaintiffs.
After evaluating the evidence before it, including the newly discovered evidence, the Board issued its opinion in August 1979. In it the Board denied most of plaintiffs’ claims, but granted at least partial relief to plaintiffs on two of their claims.[1] In October 1979, the Board denied plaintiffs’ motion for reconsideration of its August opinion.
Plaintiffs’ current motion for judgment in this court is based on the sole ground that the administrative decision should be overturned because the Board’s actions with respect to the procedural aspects of the hearing violated their rights of due process under the Fifth and Fourteenth[2] Amendments (as well as the Board’s rules, and the Disputes clause). This deprivation purportedly resulted, at least primarily, from the Board’s refusal to grant plaintiffs a three-month extension of their hearing date. This action, according to plaintiffs, was sufficient to deprive them of their constitutional right to a full-scale hearing and to render the Board’s decision invalid as being "capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith * * 41 U.S.C. § 321. Plaintiffs also argue that the Board’s determination fails to meet the Wunderlich Act requirement that it be supported by substantial evidence. Id.
*648 We conclude, on full consideration, that the record provides no support for plaintiffs’ contention that they were denied procedural due process. While the exact requirements of due process may vary according to the particular circumstances of a case,
"there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.” * * * "The fundamental requisite of due process of law is the opportunity to be heard,” * * * a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest.” [Goss v. Lopez, 419 U.S. 565, 579 (1975) (citations omitted) (emphasis added).]
Accord, Boddie v. Connecticut, 401 U.S. 371, 377-78 (1971). This standard is appropriate to measure the due process challenge plaintiffs now make.
There is no doubt that these requirements of notice and an opportunity to be heard were fully granted to plaintiffs in this instance. As early as August 1978, plaintiffs were informed by the Board that the rehearing would be held on December 5,1978. In addition to this period of time between notice and hearing, plaintiffs had a five-year period between the 1973 suspension of proceedings in this court and the December 1978 Board hearing involved here in which to prepare their case.
Plaintiffs contend, however, that there was not sufficient time for them to prepare their case by the scheduled hearing date in light of the failure to receive defendant’s answers to their complaints until November 27, 1978, a week before the hearing, and the fact that they had received defendant’s motions to dismiss only in October of that year. While it is true that pursuant to the Board’s November 9, 1978 request for more detailed answers defendant filed supplemental answers with the Board on November 14 (which plaintiffs allege they did not receive until November 27), plaintiffs were informed as early as July 1978 that defendant had acquiesced in the Board’s entrance of a general denial on defendant’s behalf.[3] Thus, *649 plaintiffs were aware of the Government’s overall postion long before the hearing date. They also had over a month between the time they received the Government’s motions to dismiss and the date of the hearing. In addition, as the Board correctly stated, "[a]ppellant had the burden of proof and should not — in this case — have expected Answers which relieved it of any substantial part of its obligation to support its Amended Complaints with evidence.” Board Decision of August 16, 1979, at 5. There is also support for the reasonableness of denying further extensions in the fact that the claims at issue arose from a contract which was performed by 1950, and these and similar claims had been litigated by the parties in various forums throughout the period between 1950 and 1978.[4] Based on these specific facts and the long history of the case, we cannot say that it was a violation of procedural due process for the Board to refuse to grant yet another postponement of the hearing date.[5]
Nor may plaintiffs draw a constitutional violation from their deliberate refusal to attend the hearing. Due process requires the opportunity for a hearing, Goss, supra, 419 U.S. at 579, not a right to ignore a properly scheduled hearing date and then to attack the decision of the administrative body on the ground that there was no hearing. Plaintiffs elected not to attend and cannot now say that they were denied an opportunity to do so. They plainly could have *650 appeared and presented their affirmative case which caused them to seek rehearing. Furthermore, plaintiffs were warned by the Board that, if they did not appear, their nonappearance would be deemed an unexcused delay and they would be considered to have waived their right to a hearing.[6]
There is likewise no support for plaintiffs’ contention that the Board violated its own rules in refusing to grant the requested three-month delay. On the contrary, the Board properly interpreted and applied its rules. Rule 11 provides that while both parties are entitled to a hearing, either may waive a hearing and submit its case upon the record. Under Rule 19,
[t]he unexcused absence of a party at the time and place set for hearing will not be occasion for delay. In the event of such absence, the hearing will proceed and the case will be regarded as submitted by the absent party as provided in Rule 11.
Nothing could be clearer than that these rules applied to the plaintiffs’ situation and permitted the Board to waive the hearing and submit plaintiffs’ case on the record. Not only is this language straightforward and its meaning plain, but the Board informed plaintiff of its meaning before the hearing took place.
Plaintiffs also urge that the Preface of the Rules, Rule 17, and Rule 18 were violated by the Board’s refusal to advance the hearing date. These provisions, which deal with such matters as the scheduling of hearings, give the Board discretion to extend time limits and to give "due regard to the desires of the parties, and to the requirement for just and inexpensive determination of appeals without unnecessary delay.” The rules thus require a balancing of the competing interests of good cause for time extensions *651 versus the avoidance of unnecessary delays. Taking into consideration the circumstances of the instant request, discussed supra, we find that the Board was acting within its discretion when it decided that an additional postponement of the hearings was not necessary or desirable.[7]
Similarly for the argument that the Board’s actions violated the Disputes Clause (Article 15). That provision required, as usual, that factual disputes be resolved by the contracting officer whose decision would be appealable to the head of the Corps of Engineers or his representative. Plaintiffs read a good faith standard into this Article and assert that it was violated by the Board’s allegedly arbitrary and erroneous refusal to grant the extension request. But as we have already pointed out supra, there was no deprivation of procedural due process, the Board followed its own procedural rules, and did not abuse its discretion. The Disputes Clause gave plaintiffs no greater procedural rights which the Board could have breached.
Finally, we come to plaintiffs’ argument that the Board’s decision lacks finality because it is not supported by substantial evidence. 41 U.S.C. § 321. The sole basis for this position is that, because the Board acted improperly in refusing to reschedule the hearing, none of the evidence upon which the Board based its decision should properly have been considered and therefore the decision was unsupported by any evidence. This argument must, of course, fail because we have already held that the Board did act constitutionally, and within its powers and discretion. There can be no doubt that the Board could rely on the evidence in the written record and the evidence which defendant presented at the December 5 hearing. As plaintiffs point to no other basis for their argument grounded on lack of substantial evidence, defendant has no responsibility to prove that the Board’s decision was based on sufficient evidence, and the court need not search the record to make an independent determination on that issue. See, LSi *652 Service Corp. v. United States, 191 Ct. Cl. 185, 188, 422 F.2d 1334, 1335-36 (1970).
For these reasons, defendant’s motion for summary judgment is granted, and plaintiffs motion is denied. The petition is dismissed.
IT IS SO ORDERED.
Plaintiffs’ motion for rehearing was denied May 15,1981.

 Defendant does not challenge these allowed claims.

 Plaintiffs reliance on the Fourteenth Amendment is obviously misplaced since there is no state involvement in this action.

 This general denial was made in compliance with Rule 6(b) of the Board’s Rules *649 which allows the Board to enter such a response if the Government has not filed its answers within 30 days after receipt of the complaint, as was the case here. The Board was not, as plaintiffs urge, required to do so within 30 days of defendant’s receiving the complaint; rather, it had the discretion to do so after 30 days had elapsed.

 In its decision of October 26,1979, denying reconsideration of its prior holding of August 16,1979, the Board pointed out:
We concluded that the Appellant had stated its claims in 1949-1950, had restated them in its pleadings in the period 1950-1965, that it had added more detail in its memoranda filed in 1977, that it had re-pled [sic] its cases in the spring of 1978. Further the Respondent had stated its position in the contracting officer final decisions, and in its original pleadings. In addition the Appellant had obtained extensive discovery of the Government’s files and only remaining witness several times since 1973. In the summer of 1978 the Board and the Government indicated that general denials would be entered in these appeals and in the June-August 1978 period the cases were scheduled for trial on 5 December 1978. Thus we find it hard to believe that after 30 years of correspondence, decisions, pleadings, and discovery the Appellant was not ready for the 5 December 1978 proceedings because it had only received the latest Government answers on November 27,1978.

 The evidence in the record provides no support for plaintiffs’ contention that the court discriminated against them in the granting of postponements and continuances.

 Plaintiffs assert that the Board’s actions impaired not only their opportunity to be heard, but also other elements of a constitutionally adequate hearing such as an unbiased tribunal and avoidance of ex parte communications which plaintiffs interpret as prohibiting hearings at which only one side appears. Plaintiffs do not support these allegations with any facts or analysis, and we find them to be without merit. With respect to the so^alled ex parte hearing, the only reason it was "ex parte” is because of plaintiffs’ unexcused absence. Nor do we find, as plaintiffs contend, that the Board was partial to defendant because it ruled against plaintiffs on the extension issue. Our examination of the record has uncovered no evidence of partiality to either side.

 Plaintiffs cite two other provisions which they believe were violated: Rule 5 (dismissal for lack of jurisdiction) and Preface ¶ a (requiring the full consideration of appeals). Since the Board clearly had jurisdiction over these claims, and there is no evidence that the Board did not fully and carefully consider plaintiffs’ appeals, these rules were fully complied with.